UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>*Plaintiff*,<br><br>v.<br><br>MORRISON & FOERSTER LLP,<br>*Defendant.* | Case No. |

## COMPLAINT

Plaintiff, American Alliance for Equal Rights, brings this complaint for declaratory relief, injunctive relief, and nominal damages against Defendant, Morrison & Foerster LLP, and alleges as follows:

1.      The law abhors racial discrimination. The lawyers who help administer that law are supposed to abhor it too. The ethical rules punish lawyers who "engage in conduct in connection with the practice of law" that discriminates "on account of race." Florida Rules of Professional Conduct 4-8.4(d).

2.      Yet Morrison has been racially discriminating against future lawyers for more than a decade. The firm's Keith Wetmore 1L Fellowship for Excellence, Diversity, and Inclusion excludes certain applicants based on their skin color. These lucrative positions are six-figure jobs that come with five-figure stipends. Yet applicants do not qualify unless they are "African American/Black, Latinx, Native Americans/Native Alaskans, and/or members of the LGBTQ+ community." So between two heterosexual applicants—one black and one white—the latter cannot apply based solely on race.

1

3.      This kind of rank discrimination was never lawful, even before *SFFA v. Harvard* held that colleges cannot use race in admissions. Morrison is an employer making hiring decisions, not a university pursuing educational benefits, and its gross racial exclusion is the kind of quota that the law has always banned. *See generally Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 722-23 (2007).

4.      But in case Morrison needed a reminder, *SFFA* reaffirms that "[e]liminating racial discrimination means eliminating all of it." 143 S. Ct. 2141, 2161 (2023). No racial discrimination is benign: It always "demeans the dignity and worth" of every American "'to be judged'" by his or her race "'instead of by his or her own merit and essential qualities.'" *Id.* at 2170.

5.      That principle is true under the Constitution, true under Title VI, and true under 42 U.S.C. §1981—the federal statute that bars private employers, like Morrison, from discriminating based on race when making contracts. Because Morrison's Wetmore fellowship is a contract that discriminates on its face, it violates §1981.

## PARTIES

6.      Plaintiff, American Alliance for Equal Rights, is a nationwide membership organization dedicated to challenging distinctions and preferences made on the basis of race and ethnicity.

7.      The Alliance has members who are ready and able to apply for Morrison's Wetmore fellowship in 2024 (and 2L fellowship in 2025), including Member A.

8.      Defendant, Morrison & Foerster LLP, is an international law firm. It has an office in Miami, Florida. It "will be awarding Wetmore 1L Fellowships" in its Miami office and elsewhere. The Miami office regularly hires Wetmore fellows, including in 2023.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

10.     Venue is proper under 28 U.S.C. §1391 because Morrison resides in Miami and a substantial part of the events or omissions giving rise to the claims occurred in Miami.

11.     Morrison has an office in Miami, contracts to do business in Miami, recruits fellows to its Miami office and runs the challenged fellowship in that office, has committed the alleged tortious conduct in Miami, and otherwise has contacts that make the exercise of personal jurisdiction in this district comport with due process.

12.     Morrison's advertisements for the fellowship are published and widely circulated on the internet, including on Morrison's website, Facebook, popular job sites like LinkedIn, and law-school websites across the country. Morrison's various advertisements for the fellowship reach, and are intended by it to reach, Miami and students interested in applying to its Miami office. Morrison also sends instructions on how to apply to the fellowship to law schools in Miami, and to other law schools to recruit their students to its Miami office.

## FACTS

**A.    Morrison operates the Wetmore 1L fellowship, which exclude certain applicants based on race.**

13.    Morrison created its 1L Wetmore fellowship in 2012 and has run it every year since, awarding "136 fellowships" "to date." Morrison "will be awarding" these fellowships in "Miami" and several other Morrison offices. Candidates "should apply to one location only."

14.    Morrison plans to operate the fellowship again in 2024, without changes. Its application process for 2024, it has announced, "will open in November of 2023."

15.    Applicants to the 1L fellowship often lack any law-school grades by the application deadline. Morrison nevertheless encourages applicants to apply without grades and then "follow up" with their grades later. Decisions are made "by mid-February."

16.    The Wetmore fellowship is a prestigious program.

17.    Students in their first year of law school are eligible to apply to the Wetmore fellowship, which consists of a paid summer-associate position and a $50,000 stipend ($25,000 after the 1L summer and $25,000 after the 2L summer if the student accepts a full-time position after graduation). Though more common for 2Ls, paid summer-associate positions are incredibly rare for 1Ls. Summer associates are paid like entry-level associates at the firm, who at Morrison make $215,000/year. (And even for 2Ls, summer-associate positions do not normally pay an additional stipend or bonus on top of that pro-rated salary.)

18.     In addition to summer employment at the firm, 1L fellows receive "substantive training and engagement with MoFo attorneys, including members of firm leadership."

19.     Morrison's summer-associate program "is designed to provide the students with mentoring and training opportunities through direct exposure to partners and associates, career development, and networking opportunities with fellow summer associates. The summer associates received technical and soft-skill training in areas such as written and oral communication, legal problem-solving and creative analysis, and teamwork and client service." In addition, summer associates "participat[e] in a variety of substantive projects, allowing them to demonstrate and hone their writing, research, and analytical skills" and "participat[e] in several firmwide training programs."

20.     1L Wetmore fellows are invited to return to the firm as 2L Wetmore fellows. Summer associates, including 2L Wetmore fellows, are Morrison's primary source of new associate hires.

21.     Under the heading "Eligibility Criteria," Morrison states that applicants cannot apply to the Wetmore fellowship unless the meet five requirements, including a diversity requirement: "Membership in a historically underrepresented group in the legal profession, including racial/ethnic minority groups and members of the LGBTQ+ community."

22.     On its job-posting page (including the page for the Miami office), Morrison defines that category to mean "*specifically* African American/Black, Latinx, Native

Americans/Native Alaskans, and/or members of the LGBTQ+ community." (Emphasis added).

23.    In other words, if they are heterosexual, applicants are disqualified if they are white, Arab American, Asian American, or otherwise not one of Morrison's favored races.

### B.    Morrison's racial exclusions injure the Alliance's members.

24.    The Alliance has members who are harmed by Morrison's racially discriminatory fellowship, including Member A.

25.    Member A is ready and able to apply to Morrison's 1L Wetmore fellowship in 2024 and 2L Wetmore fellowship in 2025, if a court orders Morrison to stop racially discriminating.

26.    Member A satisfies all the criteria for the 1L fellowship, except the discriminatory one. As a white, heterosexual man, he does not belong to a group historically underrepresented in the legal profession.

27.    Member A is a U.S. citizen.

28.    Member A could join Morrison for a full 1L summer program and at least five weeks of his 2L summer.

29.    Member A is a first-year student in good standing at an ABA-accredited law school. His law school is highly ranked and well-regarded, and Morrison has previously hired its graduates as associates.

30.     Member A has a demonstrated record of academic achievement, excellent writing and interpersonal skills, and leadership and community involvement. He attended an Ivy League college, where he was actively involved in several debating organizations and served as a peer counselor. He is an accomplished writer—authoring a best-selling book, high-level research papers, and numerous op-eds—who focuses on policy issues, including diversity and race. He has held senior leadership positions in several nonprofits and has worked on political campaigns and grassroots efforts both locally and nationally.

31.     Member A wants to apply to the fellowship because it is a prestigious program (at one of the country's best-known firms) that would provide him with great professional opportunities. Member A believes the fellowship would provide him meaningful work experience, help him create professional connections, and connect him with professional mentors.

32.     Member A is also drawn to the fellowship by the fact that Morrison will pay him tens of thousands of dollars (as a mere law student), offer additional employment as a second-year summer associate, and offer possible employment (after graduation) as a full-time associate. Member A would use the money he earns at the fellowship to help cover his living expenses while he's in school.

33.     Member A's first preference—where he would apply if Morrison were ordered to stop racially discriminating—is Morrison's office in Miami. He would like to live and work in Miami as an entry-level attorney. Member A has several close friends

in Miami, and Miami has a strong religious community that he would like to join. He previously considered moving to Miami, before deciding to go to law school.

34.     Member A is prepared to meet the fellowship's requirements and expectations if he is accepted and joins. If a court orders Morrison to stop racially discriminating, he would assemble and promptly submit all the requested application materials, including his law-school grades once they become available.

## CLAIM FOR RELIEF

### COUNT
### Violation of the Civil Rights Act of 1866
### 42 U.S.C. §1981

35.     The Alliance repeats and realleges each of its prior allegations.

36.     Section 1981 states that "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. §1981(a).

37.     This statute "protects the equal right of all persons … without respect to race." *Domino's Pizza, Inc v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). Its "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 298 (1976).

38.     Section 1981 authorizes both equitable and damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

39.     Morrison is violating §1981 by expressly excluding certain applicants from the fellowship based on race.

40.     The fellowship implicates the activities enumerated under §1981, including "making … of contracts."  42 U.S.C. §1981(b). A contract "need not already exist." *Domino's Pizza*, 546 U.S. at 475. Section 1981 "protects the would-be contractor along with those who have already made contracts." *Id.* Thus, section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.*

41.     The fellowship involves and is designed to lead to contractual relationships between Morrison and the fellows. In exchange for paid employment and a stipend, the fellows agree to work at the firm as summer associates.

42.     Morrison' facial race-based discrimination is intentional. Under §1981, "a plaintiff who alleges a policy that is discriminatory *on its face* is not required to make further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

43.     Morrison cannot escape liability for racial discrimination by saying that it also discriminates against applicants who are not LGBTQ+. An employer cannot "discriminate against some employees on the basis of race … merely because he favorably treats other members" of that race. *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). An employer who refuses to hire "black women," for example, cannot escape liability for racial discrimination just because it's willing to hire white women and black men. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980). "So long as the plaintiff's [race] was one but-for cause of that decision, that is enough." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). Plus discriminating against students because they

9

are not LGBTQ+ is illegal too. *See Bozarth v. Md. State Dep't of Educ.*, 2021 WL 1225448, at *18 (D. Md. Mar. 31).

# PRAYER FOR RELIEF

The Alliance respectfully asks this Court to enter judgment in favor of it and against Morrison and to provide the following relief:

A.   a declaration that Morrison's Wetmore fellowship violates §1981;

B.   a temporary restraining order and preliminary injunction barring Morrison from closing the fellowship's application window, selecting fellows, enforcing the fellowship's racially discriminatory eligibility requirements, or considering race as a factor when selecting fellows;

C.   a permanent injunction ordering Morrison to end the Wetmore fellowship; barring Morrison from considering race as a factor when selecting fellows; ordering Morrison to formulate new eligibility requirements for the fellowship that are strictly race neutral; and, if necessary, ordering Morrison to redo applications and selections for the fellows in a strictly race-neutral manner, including by letting 1Ls who were not previously eligible to apply as 2Ls;

D.   nominal damages of $1;

E.   reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable law; and

F.   all other relief that the Alliance is entitled to.

Dated: August 22, 2023

Respectfully submitted,

/s/ *Michael A. Sasso*

Cameron T. Norris*
  (TN Bar. No. 33467)
Tiffany H. Bates*
  (VA Bar No. 94166)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
tiffany@consovoymccarthy.com

Michael A. Sasso
  (FL Bar No. 93814)
Christian Bonta
  (FL Bar No. 1010347)
SASSO & SASSO, P.A.
1031 West Morse Blvd, Ste. 120
Winter Park, FL 32789
(407) 644-7161
masasso@sasso-law.com
cbonta@sasso-law.com

Adam K. Mortara*
  (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

*pro hac vice forthcoming

11