**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, *Plaintiff*, v. MORRISON & FOERSTER LLP, *Defendant.* | Case No. 1:23-cv-23189-KMW |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
EXPEDITED MOTION FOR PRELIMINARY INJUNCTION
(RULING REQUESTED BY OCTOBER 31, 2023)**

The law abhors racial discrimination. The lawyers who help administer that law are supposed to abhor it too. *See* Florida Rules of Professional Conduct 4-8.4(d). Yet Morrison has been racially discriminating against future lawyers for more than a decade. The firm's Keith Wetmore 1L Fellowship for Excellence, Diversity, and Inclusion excludes certain applicants based on skin color. These prestigious positions are six-figure jobs that come with five-figure stipends. Yet applicants do not qualify unless they are "African American/Black, Latinx, Native Americans/Native Alaskans, and/or members of the LGBTQ+ community." So between two heterosexual applicants—one black and one white—the latter cannot apply based solely on race.

This kind of rank discrimination was never lawful, even before *SFFA v. Harvard* held that colleges cannot use race in admissions. Morrison is an employer making hiring decisions, not a university pursuing educational benefits, and its gross racial exclusion is the kind of quota that the law has always banned. *See generally Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 722-23 (2007). But if any doubt remained, *SFFA* reaffirms that "[e]liminating racial discrimination means eliminating all of it." 143 S. Ct. 2141, 2161 (2023). No racial discrimination is benign: It always

1

"demeans the dignity and worth'" of every American "'to be judged'" by his or her race "'instead of by his or her own merit and essential qualities.'" *Id.* at 2170.

That principle is true not just under the Constitution and Title VI, but also under 42 U.S.C. §1981—the federal statute that bars private employers, like Morrison, from discriminating based on race when making contracts. Because Morrison's Wetmore fellowship is a contract that discriminates on its face, it violates §1981. Plaintiff, the American Alliance of Equal Rights, has members who are ready and able to apply for the program in 2024, but cannot because they are wrong race. This Court should preliminarily enjoin Morrison from opening the application window, selecting fellows, or otherwise operating its racially discriminatory fellowship.

## BACKGROUND

Morrison operates the Wetmore 1L fellowship, which excludes certain applicants based on race. Morrison created its 1L Wetmore fellowship in 2012 and has run it every year since, awarding "136 fellowships" "to date." Norris Decl. Ex. A. at 2. Morrison "will be awarding" these fellowships in "Miami" and several other Morrison offices. Ex. B. at 1. Candidates "should apply to one location only." Ex. B. at 1.

The Wetmore fellowship is a prestigious program. Students in their first year of law school are eligible to apply to the fellowship, which consists of a paid summer-associate position and a $50,000 stipend ($25,000 after the 1L summer and $25,000 after the 2L summer if the student accepts a full-time position after graduation). Ex. B. at 1, 3; Ex. E. Though more common for 2Ls, paid summer-associate positions are incredibly rare for 1Ls. Summer associates are paid like entry-level associates at the firm, who at Morrison make $215,000/year. Ex. B at 2. (And even for 2Ls, summer-associate positions do not normally pay an additional stipend or bonus on top of that pro-rated salary.)

In addition to summer employment at the firm, 1L fellows receive "substantive training and engagement with MoFo attorneys, including members of firm leadership." Ex. E. Morrison's summer-

2

associate program "is designed to provide the students with mentoring and training opportunities through direct exposure to partners and associates, career development, and networking opportunities with fellow summer associates." Ex. F. Summer associates receive "technical and soft-skill training in areas such as written and oral communication, legal problem-solving and creative analysis, and teamwork and client service." Ex. F. In addition, they "participat[e] in a variety of substantive projects, allowing them to demonstrate and hone their writing, research, and analytical skills," and "participat[e] in several firmwide training programs." Ex. F. The 1L Wetmore fellows are usually invited to return to the firm as 2L Wetmore fellows. Ex. B. at 3.

Eligibility for the fellowship depends on an applicant's race. Under the heading "Eligibility Criteria," Morrison states that applicants cannot apply to the Wetmore fellowship unless they meet a diversity requirement: "Membership in a historically underrepresented group in the legal profession, including racial/ethnic minority groups and members of the LGBTQ+ community." Ex. E. On its job-posting page (including the page for the Miami office), Morrison defines that category to mean "*specifically* African American/Black, Latinx, Native Americans/Native Alaskans, and/or members of the LGBTQ+ community." Ex. B. at 2 (emphasis added). In other words, heterosexual applicants are disqualified if they are white, Arab American, Asian American, or otherwise not one of Morrison's favored races.

Morrison plans to operate the fellowship again in 2024, without changes. Its application process for 2024, it has announced, "will open in November of 2023." Ex. C. Applicants to the 1L fellowship often lack any law-school grades by the application deadline. Morrison nevertheless encourages applicants to apply without grades and then "follow up" with their grades later. Ex. D. Decisions are made "by mid-February." Ex. D.

Plaintiff, the American Alliance for Equal Rights, is a nationwide membership organization dedicated to challenging distinctions and preferences made on the basis of race and ethnicity. Ex. G

3

(Blum Decl.) ¶3. Morrison's racial exclusions injure the Alliance's members, including Members A and B. ¶¶4-5. Members A and B are ready and able to apply to Morrison's 1L Wetmore fellowship in 2024 and its 2L Wetmore fellowship in 2025, if a court orders Morrison to stop racially discriminating. Ex. H (Member A. Decl.) ¶9; Ex. I (Member B. Decl.) ¶9.

Member A satisfies all the criteria for the 1L fellowship, except the discriminatory one. Ex. H ¶¶2-5. Member A is a U.S. citizen. ¶4. He is a first-year student in good standing at an ABA-accredited law school. ¶3. His law school is highly ranked and well-regarded, and Morrison has previously hired its graduates as associates. ¶3. Member A has a demonstrated record of academic achievement, excellent writing and interpersonal skills, and leadership and community involvement. ¶5. He attended an Ivy League college, where he was actively involved in several debating organizations and served as a peer counselor. ¶5. He is an accomplished writer—authoring a best-selling book, high-level research papers, and numerous op-eds—who focuses on policy issues, including diversity and race. ¶5. He has held senior leadership positions in several nonprofits, and he has worked on political campaigns and grassroots efforts both locally and nationally. ¶5. He could join Morrison for a full 1L summer program and at least five weeks of his 2L summer. ¶10. But as a white, heterosexual man, he does not belong to a group historically underrepresented in the legal profession. ¶2.

Members B also satisfies all the criteria for the 1L fellowship, except the discriminatory one. Ex. I ¶¶2-5. Though he is not white, he does not belong to a group historically underrepresented in the legal profession. ¶2. Member B is a U.S. citizen. ¶4. He could join Morrison for a full 1L summer program and at least five weeks of his 2L summer. ¶10. Member B is a first-year student in good standing at an ABA-accredited law school. ¶3. His law school is highly ranked and well-regarded, and Morrison has previously hired its graduates as associates. ¶3. Member B has a demonstrated record of academic achievement, excellent writing and interpersonal skills, and leadership and community involvement. ¶5. He attended a well-regarded university, where he graduated with high honors and was

actively involved in several debating organizations. ¶5. He received a master's degree from a preeminent international institution. ¶5.

Members A and B want to apply to the fellowship because it is a prestigious program (at one of the country's best-known firms) that would provide them with great professional opportunities. Ex. H ¶6; Ex. I ¶6. They believe the fellowship would provide them meaningful work experience, help him create professional connections, and connect him with professional mentors. Ex. H ¶6; Ex. I ¶6. Members A and B are also drawn to the fellowship by the fact that Morrison will pay them tens of thousands of dollars (as a mere law student), offer additional employment as a second-year summer associate, and offer possible employment (after graduation) as a full-time associate. Ex. H ¶8; Ex. I ¶8. They would use the money they earn at the fellowship to help cover living expenses while they are in school. Ex. H ¶8; Ex. I ¶8.

These members' first preference—where they would apply if Morrison were ordered to stop racially discriminating—is Morrison's office in Miami. Ex. H ¶7; Ex. I ¶7. They would like to live and work in Miami as an entry-level attorney. Ex. H ¶7; Ex. I ¶7. They are prepared to meet the fellowship's requirements and expectations if they are accepted and join. Ex. H ¶11; Ex. I ¶11. If a court orders Morrison to stop racially discriminating, they would assemble and promptly submit all the requested application materials, including their law-school grades once available. Ex. H ¶12; Ex. I ¶12.

## ARGUMENT

The Alliance is entitled to a preliminary injunction if it can satisfy four factors: it has "a substantial likelihood of success on the merits," it "will suffer irreparable harm" without preliminary relief, the balance of harms weighs in its favor, and an injunction "would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). The Alliance can satisfy all four.

## I. Morrison's fellowship likely violates §1981.

Section 1981 states that "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. §1981(a). It "protects the equal right of all persons … without respect to race." *Domino's Pizza, Inc v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). And its "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976).

The statute applies to governmental and "nongovernmental" actors alike. §1981(c). It contains a federal cause of action "against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *see Jenkins v. Nell*, 26 F. 4th 1243, 1249 (11th Cir. 2022) ("Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts."). And it authorizes both equitable relief and damages. *See Johnson*, 421 U.S. at 459-60.

Morrison is violating §1981 by expressly excluding certain applicants from its fellowships based on race. The Wetmore fellowship implicates the activities enumerated under §1981, including "making … of contracts." 42 U.S.C. §1981(b). A contract "need not already exist" to trigger §1981. *Domino's Pizza*, 546 U.S. at 476. The statute "protects the would-be contractor along with those who have already made contracts." *Id.* It "offers relief when racial discrimination blocks the creation of a contractual relationship." *Id.* The fellowship involves and is designed to lead to contractual relationships between Morrison and the fellows. In exchange for paid employment and a stipend, the fellows agree to work at the firm as summer associates.

Morrison's facial race-based discrimination is intentional. Under §1981, "a plaintiff who alleges a policy that is discriminatory *on its face* is not required to make further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014). And Morrison cannot escape liability for racial discrimination by saying that it also discriminates against

6

applicants who are not LGBTQ+. An employer cannot "discriminate against some employees on the basis of race … merely because he favorably treats other members" of that race. *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). An employer who refuses to hire "black women," for example, cannot escape liability for racial discrimination just because it's willing to hire white women and black men. *Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980). "So long as the plaintiff's [race] was one but-for cause of that decision, that is enough." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). Plus discriminating against students because they are not LGBTQ+ is illegal too. *See Bozarth v. Md. State Dep't of Educ.*, 2021 WL 1225448, at *18 (D. Md. Mar. 31).

## II. The Alliance and its members will suffer irreparable harm without immediate relief.

The Alliance and its members will suffer irreparable harm absent a preliminary injunction. "The injury in cases of this kind is that a discriminatory classification prevents the plaintiff from competing on equal footing." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (cleaned up); *see also Parents Involved*, 551 U.S at 719 ("being forced to compete in a race-based system that may prejudice the plaintiff"). This "denial of equal treatment result[s] from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). It is irreparable. *See, e.g.*, *Coal. for Equity and Excellence in Md. Higher Ed. v. Md. Higher Ed. Comm'n*, 295 F. Supp. 3d 540, 557-58 (D. Md. 2017).

Moreover, the application process will open soon—well before this case could reach final judgment. Morrison has announced that the application process for 2024 "will open in November of 2023." Norris Decl. Ex. C. Fellowship awardees will be selected "by mid-February." Ex. D. Once the application period closes and fellows have been selected, Members A and B will have "no do over." *League of Women Voters v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016). They will have lost the opportunity to

apply for or receive a fellowship in the normal course. That lost opportunity, and the many intangible benefits that the fellowship provides, cannot be remedied with money damages.

### III. The balance of the harms favors the Alliance.

The balance of harms favors the Alliance. As explained, the harm to it and its members is substantial: the harm of racial discrimination, the inability to compete on an equal footing, and the potential permanent loss of an opportunity to join a renowned fellowship. Morrison, however, faces only the potential for a slight delay in its ability to select and hire fellows. This delay will "not substantially injure" the firm. *League of Women Voters*, 868 F.3d at 12. Courts have recognized that a mere delay in a deadline imposes little, if any, harm, especially where the deadline was "arbitrarily set in the first place." *GOS Operator, LLC v. Sebellius*, 2012 WL 175056, at *5 (S.D. Ala. Jan. 20). And Morrison brought any harm it might suffer on itself by adopting a racially discriminatory program. *See Kos Pharms., Inc. v. Andryx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004).

### IV. The public interest favors the Alliance.

The public interest also favors the Alliance. "[C]ivil rights actions vindicate a public interest." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) (citing *Williams v. Thomas*, 692 F.2d 1032, 1038 (5th Cir.1982)). And "[i]t is in the public interest for courts to carry out the will of Congress." *Myland Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000). Especially where, as here, Morrison has engaged in "[r]acial discrimination," which "is invidious in all contexts." *SFFA*, 143 S. Ct. at 2166 (cleaned up).

### CONCLUSION

For all these reasons, this Court should grant the Alliance's motion for a preliminary injunction.

Dated: August 29, 2023

Cameron T. Norris*
  (TN Bar. No. 33467)
Tiffany H. Bates*
  (VA Bar No. 94166)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com
tiffany@consovoymccarthy.com

Adam K. Mortara*
  (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

*pro hac vice

Respectfully submitted,

/s/ Michael A. Sasso
Michael A. Sasso
  (FL Bar No. 93814)
Christian Bonta
  (FL Bar No. 1010347)
Sasso & Sasso, P.A.
1031 West Morse Blvd, Ste. 120
Winter Park, FL 32789
(407) 644-7161
masasso@sasso-law.com
cbonta@sasso-law.com